[Cite as *Steven A. Ettinger, Inc. v. Kramer*, 2021-Ohio-2219.]

STATE OF OHIO        )
                        )ss:
COUNTY OF SUMMIT    )

|  |  |
|---|---|
| STEVEN A. ETTINGER, INC. PROFIT SHARING PLAN | IN THE COURT OF APPEALS NINTH JUDICIAL DISTRICT |

C.A. No.     29848

       Appellant

       v.

RICHARD J. KRAMER, et al.

       Appellees

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2018-10-4432

DECISION AND JOURNAL ENTRY

Dated: June 30, 2021

HENSAL, Presiding Judge.

{¶1}   Steven A. Ettinger Inc. Profit Sharing Plan appeals from the judgment of the Summit County Court of Common Pleas, dismissing its shareholder derivative complaint. This Court reverses and remands for further proceedings.

I.

{¶2}   Steven A. Ettinger Inc. Profit Sharing Plan ("Ettinger") filed a shareholder derivative complaint against 14 current and former members of Goodyear Tire & Rubber Company's ("Goodyear") board of directors ("the Board"), and named Goodyear as a nominal defendant (collectively, "the Defendants"). The 34-page complaint alleges that the Board breached their fiduciary duties, engaged in fraudulent conduct, and committed ultra vires acts in connection with the concealment of safety issues related to Goodyear's G159 tire, which resulted in litigation against Goodyear. The complaint alleges that the Board directly and/or indirectly exercised control over Goodyear's wrongful acts, and that they breached their duties under

Goodyear's Business Conduct Manual and Code of Ethics, as well as the duties imposed upon some directors by virtue of their membership on certain committees. As a result, it alleges, Goodyear's reputation was damaged, Goodyear was subject to increased litigation costs and sanctions, and Goodyear may be subjected to additional civil penalties and criminal liability. The complaint also included the following factual allegations.

{¶3} According to the complaint, Goodyear manufactured the G159 tire from 1996 until 2003. While originally intended for pickup and delivery trucks, it was later sold for use on motorhomes. The complaint alleges that the G159 tire was designed to withstand a temperature of 194 degrees Fahrenheit, and that using the G159 tires on vehicles travelling long distances caused the tire's temperature to exceed 194 degrees. It alleges that, when used on motorhomes, the G159 tire was prone to overheating, which resulted in tread separation, which, in turn, resulted in crashes, accidents, and – ultimately – lawsuits. It also alleges that, when the speed limits on the nation's highways increased to 75 MPH, Goodyear increased the speed rating on the G159 tires from 65 MPH to 75 MPH, and falsely claimed that the increased speed rating was safe and did not compromise the tire's safety margin.

{¶4} The complaint alleges that Goodyear faced numerous property damage and personal injury lawsuits for injuries allegedly resulting from the use of the G159 tires. It alleges that Goodyear quietly and confidentially settled these lawsuits while only internally acknowledging the problems with the G159 tires. It alleges that these settlements were done without full disclosure of the problems with the tires, and that Goodyear required the plaintiffs to execute confidentiality agreements to prevent disclosure of any evidence of defects in the G159 tires.

{¶5}    The complaint highlights two lawsuits related to the G159 tires: *Haeger v. Goodyear Tire & Rubber Co.* and *Schalmo v. Goodyear Tire & Rubber Co. Haeger* resolved first, resulting in a settlement. *Schalmo* resolved after *Haeger,* resulting in a $5.6 million jury verdict against Goodyear. The complaint alleges that *Schalmo* provided previously unknown information to the *Haeger* plaintiffs about the G159 tires, including test results that called into question the safety of those tires when used on motorhomes. As a result of the *Schalmo* decision, the *Haeger* plaintiffs pursued additional litigation. The *Haeger* court determined that Goodyear and its attorneys, including its associate general counsel, Deborah Okey, provided false and misleading information to the court prior to that case being settled. The *Haeger* court sanctioned Goodyear and its lawyers $2.7 million, which was affirmed on appeal.

{¶6}    The complaint alleges that, while *Haeger* shed light on Goodyear's misleading and deceptive conduct, the extent of Goodyear's involvement in concealing the defects related to the G159 tires was not known until additional evidence was uncovered in 2018. It alleges that, in January 2018, the National Highway Traffic Safety Administration opened an investigation regarding the G159 tires, which could lead to civil penalties against Goodyear if the investigation reveals that Goodyear failed to report certain information.

{¶7}    The complaint also alleges that, in 2018, a blog called Jalopnik obtained and published previously sealed records that revealed additional facts about the G159 "cover-up[.]" It asserts that this information established the Board's knowledge and participation (either by action or inaction) in the G159 cover-up, and that – prior to the publication of these previously sealed records – Ettinger had no knowledge of the Board's conduct. It concludes that, by virtue of the Board's fraudulent concealment, any applicable statute of limitations was tolled. The complaint also alleges that the Board made no effort to establish and maintain adequate internal controls to

ensure that Goodyear had systems in place to prevent and report safety defects associated with its products, including the G159 tire.

{¶8}    Six pages of the 34-page complaint specifically address demand futility.  The complaint alleges that a pre-suit demand to the Board[1] would have been futile because the Board is incapable of making an independent and disinterested decision in light of the ultra vires and illegal acts the Board committed.  Regarding the ultra vires acts, the complaint alleges that seven of the current directors attended a presentation by Attorney Okey (Goodyear's then-associate general counsel) in 2010 regarding the G159 tire litigation, which establishes that they knew or should have known that the G159 tire was defective.  It alleges that the Board's subsequent inaction reveals that the Board knowingly engaged in a cover-up or, at best, turned a blind eye to the widespread misconduct.  As a result, it alleges, Goodyear has experienced a loss of reputation and consumer confidence, and may possibly incur fines.

{¶9}    Alternatively, the complaint alleges that a pre-suit demand would have been futile because the Board is not disinterested given that the individual directors face a substantial likelihood of liability.  To that end, the complaint alleges that the Board knowingly failed to fulfill their duties, and knowingly participated in a cover-up of the G159 tire defects.  It also alleges that the Board lost its independence due to the directors' ability to reap substantial financial benefits by failing to comply with the law and government regulation.

{¶10} The Defendants moved to dismiss Ettinger's complaint, arguing that: (1) the complaint was not properly verified under Civil Rule 23.1; and (2) Ettinger lacked standing due to

---

[1] We note that demand futility relates to the defendants who were members of the board of directors at the time the complaint was filed.  *Monday v. Meyer*, N.D.Ohio No. 1:10 CV 1838, 2011 WL 5974664, *4 (Nov. 29, 2011) ("Demand futility is determined with respect to the board as it existed at the time the complaint was filed.")

its failure to submit a pre-suit demand to the Board. In the alternative, the Defendants requested that the trial court order Ettinger to submit a demand to the Board, and stay the matter pending the Board's consideration of that demand.

{¶11} Regarding Ettinger's alleged failure to properly verify the complaint, the Defendants pointed to language contained on the complaint's verification page stating that Steven A. Ettinger, on behalf of Steven A. Ettinger Inc. Profit Sharing Plan, "declare[d]" under penalty of perjury" that he had "personal knowledge" that the matters alleged in the complaint "are true," and that other matters alleged in the complaint "are true and accurate to the best of [his] personal knowledge, information and belief, based upon the investigation conducted by counsel." The Defendants argued that these unsworn, un-notarized statements were insufficient under Ohio law, which requires such verifications to be made in the presence of an authorized officer, such as a notary public, and to swear to the truth of the statements contained in the document.

{¶12} Regarding Ettinger's lack of standing due to its failure to submit a pre-suit demand to the Board, the Defendants asserted that Ettinger did not satisfy its burden of establishing that a pre-suit demand would have been futile. They asserted that the demand-futility analysis boiled down to one question: "[d]oes the complaint set forth particularized facts that demonstrate that at least 6 of the 12 current members of Goodyear's board are substantially likely to be found by clear and convincing evidence to have deliberately harmed Goodyear or to have recklessly disregarded its interests?" The Defendants asserted that the resounding answer to this question was "no[,]" and set forth the following arguments and sub-arguments in support of their position:

> (1) Ettinger failed to plead with particularity that at least six of the current directors were substantially likely to be personally liable because: (a) the complaint "lump[ed]" the directors together and did not allege particularized facts as to each director; (b) mere allegations of committee membership are insufficient to establish a substantial likelihood of personal liability; (c) allegations about the supposed defectiveness of the G159 tire, litigation sanctions, regulatory inquiries, or the lack of internal controls do not establish a substantial likelihood of

personal liability; (d) Ettinger's claims were barred by the four-year statute of limitations, and it followed that the Board could not face liability for time-barred claims;

(2) allegations that the directors were paid for serving on the board of directors did not establish demand futility; and

(3) neither conclusory allegations of ultra vires acts nor an unsupported assertion of a lack of independence establishes demand futility.

{¶13} The trial court granted the Defendants' motion to dismiss prior to Ettinger filing a response. The trial court did so based upon the fact that the verification did not contain language indicating that it was made in the presence of an authorized officer, such as a notary public. The trial court later vacated that order, acknowledging that it issued the order prematurely, and allowed Ettinger the opportunity to respond. Ettinger filed a response, as well as an amended verification that was executed before a notary public. The trial court ultimately granted the Defendants' motion to dismiss on its merits, and this appeal followed. Ettinger now raises one assignment of error for this Court's review.

## II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY HOLDING THE VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FAILS TO ALLEGE SUFFICIENT PARTICULARIZED FACTS UNDER CIVIL RULE 23.1 DEMONSTRATING THAT A PRE-SUIT DEMAND WOULD HAVE BEEN FUTILE BECAUSE A MAJORITY OF GOODYEAR'S BOARD OF DIRECTORS WERE UNABLE TO MAKE AN UNBIASED AND INDEPENDENT BUSINESS DECISION IN DETERMINING WHETHER THE SUIT SHOULD BE FILED.

{¶14} In Ettinger's assignment of error, Ettinger argues that the trial court erred by finding that the complaint failed to allege sufficient particularized facts demonstrating that a pre-suit demand would have been futile. Ettinger argues, in part, that the trial court's analysis was incomplete because the trial court focused exclusively on the complaint's allegations about the

excessive compensation received by the Board. For the reasons that follow, we sustain Ettinger's assignment of error.

{¶15} The trial court's order granting the Defendants' motion to dismiss is five pages long and mostly contains a summary of various filings, the arguments presented, and a recitation of some applicable law. The trial court's application of the law to the facts of this case is one paragraph long, stating:

> Despite having named all board members as defendants, Plaintiff has not shown the directors are conflicted, not independent, or otherwise incapable of exercising reasonable business judgment with any particularity. The notion that board members cannot exercise independent business judgment because they receive compensation from the corporation or because they are directors is rejected as falling short of demonstrating demand futility. Plaintiff's allegations fail to provide any detail as to how at least six of the twelve board members "reaped" financial benefits from their alleged conduct covering up the G159's defects, apart from receiving compensation for their services as board members, or what personal adverse company interests they have to participate in a cover up of the G159 tire defects. Broad and vague allegations of futility have consistently been held to not satisfy the demand requirements of Civil Rule 23.1.

{¶16} The trial court did not address many of the allegations contained in Ettinger's complaint regarding demand futility. For example, it did not address the allegations regarding the Board's illegal and ultra vires acts, or the allegations regarding the individual directors' exposure to liability. Nor did the trial court address many of the arguments raised by the parties in their motion-to-dismiss briefing, including the alternative bases for dismissal raised in the Defendants' motion. For example, the trial court did not address the Defendants' argument that Ettinger's claims were barred by the statute of limitations, or that the complaint was not properly verified, warranting dismissal. While a trial court is not required to address and dispose of each argument, the nature of this case and the number of arguments presented differentiates this case from others. This case involves a 34-page derivative shareholder complaint, multiple defendants, and extensive briefing that raises numerous arguments and legal issues concerning demand futility. It requires a

comprehensive review and analysis of all of the allegations of the complaint to determine whether Ettinger alleged sufficient particularized facts demonstrating that a pre-suit demand would have been futile. That analysis does not turn on the allegations regarding the Board's compensation, or the motives related thereto, alone. Yet that is what the trial court's order in this case suggests.

{¶17} Because of the trial court's limited analysis, the parties essentially reargued the same arguments presented below on appeal. *See Copen v. CRW, Inc.*, 9th Dist. Wayne No. 15AP0034, 2017-Ohio-349, ¶ 12, quoting *Mourton v. Finn*, 9th Dist. Summit No. 26100, 2012-Ohio-3341, ¶ 9 (addressing the trial court's grant of summary judgment and noting the trial court's failure to provide an analysis is "unfair to the parties, who are essentially forced to simply refile their summary judgment motions in the appellate court due to being unsure why the trial court rendered the decision it did."). That puts this Court in the position of having to address these arguments in the first instance. That is not the function of a reviewing court. *Mourton* at ¶ 9 ("This Court has consistently held that it is the trial court's duty to resolve issues in the first instance."). This Court, therefore, reverses and remands the matter so that the trial court can set forth an analysis that permits our review. *See Molnar v. City of Green*, 9th Dist. Summit No. 28650, 2018-Ohio-1168, ¶ 5-6 (reversing and remanding the trial court's denial of a motion to dismiss based upon the trial court's failure to provide an analysis); *Baab v. Medina City Schools Bd. of Edn.*, 9th Dist. Medina No. 14CA0091-M, 2015-Ohio-5315, ¶ 6 (reversing and remanding the trial court's denial of a motion to dismiss "so that the trial court can set forth an analysis that permits our review."). Ettinger's assignment of error is sustained on that basis.

III.

{¶18}  Steven A. Ettinger Inc. Profit Sharing Plan's assignment of error is sustained.  The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

RICHARD S. WAYNE, ROBERT R. SPARKS, and JEFFREY A. LEVINE, Attorneys at Law, for Appellant.

ANDREW S. GOLDWASSER and PHILLIP A. CIANO, Attorneys at Law, for Appellant.

GEOFFREY J. RITTS, Attorney at Law, for Appellee.

MARJORIE P. DUFFY, Attorney at Law, for Appellee.

JOHN C. FAIRWEATHER, AMANDA M. LEFFLER, and CHRISTOHER T. TEODOSIO, Attorneys at Law, for Appellee.